Argued October 13, decided October 21, 1913.

## INGRAM *v.* BASYE.*

### (135 Pac. 883.)

**Work and Labor—Rendition of Services—Promise to Pay—Implied Contract.**

1. Where the person who has rendered and the person who has received services are not related by blood or marriage, a promise to pay will be implied, which, however, will be negatived if it appears that at the time the services were rendered there existed between them a family relationship the incidents of which are essentially similar to those ordinarily associated with such relationship when it exists between kinsfolk.

**Work and Labor—Services—Implied Promise to Pay—Persons in Loco Parentis.**

2. Where defendants stood *in loco parentis* to plaintiff and received her services for many years but failed to discharge their duties in that respect, resulting in mistreatment, neglect, and abuse of plaintiff, and failed to give her educational advantages according to their station in life, the family relation was no defense to an action on an implied contract to pay plaintiff for her services.

**Work and Labor—Services—Implied Contract—Family Relation—Performance of Duties—Question for Jury.**

3. Where defendants stood *in loco parentis* to plaintiff and claimed that their situation as such was a defense to an action for plaintiff's services, whether they performed their duties to plaintiff or failed to do so and abused and neglected her so as to entitle her to recover for her services to them *held* for the jury.

---

*The authorities on the implication of agreement to pay for services rendered by relative or member of household are discussed in an extensive note in 11 L. R. A. (N. S.) 873; and as to implied contract to pay for services to relative not living as part of same family, see note in 1 L. R. A. (N. S.) 819; and for the right of a child who supports parent at request of other children to recover therefor from the latter, see note in 27 L. R. A. (N. S.) 683.        REPORTER.

From Polk: PERCY R. KELLY, Judge.

Department 2.    Statement by MR. JUSTICE McNARY.

This is an action by Elizabeth Ingram against Alexander Basye and Louisa Basye to recover judgment in the sum of $3,000 for the rendition of personal services. Following the statement that plaintiff is of the age of 36 years and that defendants are husband and wife, the complaint reads that from the time of infancy until the 1st of July, 1910, plaintiff has resided with defendants and has since attaining the age of 14 years rendered services for defendants as a domestic and in the capacity of a farm laborer, receiving naught therefor, save scant clothing, board and lodging; that defendants subjected plaintiff to lead a life of illiteracy and unremitting toil and hardships, compelling her to render services of the most menial kind and laborious description and to a life of slavery until certain persons, actuated by motives of humanity, instituted appropriate proceedings to release plaintiff from bondage.    In conclusion is the allegation that the reasonable value of the services rendered during the period of 22 years anterior to the 1st day of July, 1910, is $3,000.

Defendants in their answer deny the material portions of the complaint and declare as a separate defense that since plaintiff was of the age of two years she has resided with defendants as their daughter and as a member of their family, being treated and received as such; that when defendants received plaintiff into their home her father was dead and her mother was a pauper unable to support and care for plaintiff. Continuing defendants assert that they caused plaintiff to attend the public schools regularly from the time of schooling age until the age of 18 years; that during the time plaintiff resided with defendants they treated plaintiff with kindness and consideration, re-

quiring the performance of such services as are usually done by a daughter whose parents are farmers; that plaintiff appeared satisfied with her lot until about July 1, 1910, when certain enemies of defendants caused plaintiff forcibly to be taken from the home of defendants; that plaintiff from childhood suffered from a defective mind, being more of a burden than of a benefit to defendants; and that the cost of maintaining and educating plaintiff far exceeded the value of her services.

In her rejoinder, plaintiff declared the hardships which she endured and the ill treatment she received while residing with defendants rendered her dull and to a degree mentally weak, and that, while in the tender years of life, defendant Alex. Basye criminally assaulted plaintiff and continued such conduct thereafter until her removal from defendants' custody by citizens acting in plaintiff's behalf.

At the conclusion of the testimony offered by plaintiff in proof of her demand, the trial court, in response to a motion of defendants' counsel, directed the jury to return a verdict for the defendants on the ground that plaintiff had failed to prove an express contract for services rendered or a condition from which a contract by implication might arise.        REVERSED.

For appellant there was a brief over the name of *Carson & Brown,* with an oral argument by *Mr. Thomas Brown.*

For respondents there was a brief over the names of *Mr. John Bayne, Mr. Lott D. Brown* and *Mr. B. F. Swope,* with an oral argument by *Mr. Bayne.*

MR. JUSTICE McNARY delivered the opinion of the court.

From the record we gather that plaintiff entered the home of defendants during the infantile period of

her life and there remained until the arrival of her thirty-sixth year; that no blood nor marriage relation existed between the parties, plaintiff and defendants, outside the reservation that plaintiff is a second cousin of defendant Louisa Basye; that no express contract for compensation was ever made on the one side for wages or on the other side for support; that plaintiff's claim for pay rests upon an implied contract.

1. A contract to pay is presumed from the acceptance of beneficial labor, unless the relationship of the parties is such as to forbid the presumption. Indeed, the law is well settled that, where the person who rendered and the person who received the services were not related either by blood or marriage, the implication of a promise to pay compensation will, as a general rule, be negatived, if it appears that at the time the services were rendered there existed between them a family relationship, the incidents of which are essentially similar to those which are ordinarily associated with such relationship when it exists between kinsfolk: *Wilkes* v. *Cornelius,* 21 Or. 348 (28 Pac. 135) ; *Bennett* v. *Stephens,* 8 Or. 444; *Fitzpatrick* v. *Dooley,* 112 Mo. App. 165 (86 S. W. 719) ; *Williams* v. *Hutchinson,* 3 N. Y. 312 (53 Am. Dec. 301).

To differentiate the law as applied to relatives and the rule as affecting strangers living together as a family is to observe that no agreement for compensation will be implied as between relatives, and a contract alleged to exist must be affirmatively shown, while with respect to strangers a contract for compensation will be implied unless a contrary situation is exhibited, the burden thereof being on the beneficiary of the services.

The Supreme Court of Georgia in the thoroughly considered case of *Howard* v. *Randolph,* 134 Ga. 691 (68 S. E. 586, 20 Ann. Cas. 392, 29 L. R. A. (N. S.) 294), speaking through EVANS, P. J., said:

"Where a person voluntarily assumes the relation of a parent to a child, whom he is under no obligation to support, and faithfully discharges the duties of that relation by receiving such child into his family and educating and supporting him on the same footing as if the child were his own, in the absence of an express agreement the child cannot maintain an action against such person for services rendered while a minor, although the value of such services may exceed the expenses of such education and support. Under such circumstances a promise to pay wages will not be implied: *Williams* v. *Hutchinson,* 3 N. Y. 312 (53 Am. Dec. 301); *Tyler* v. *Burrington,* 39 Wis. 376. As was said in *Schrimpf* v. *Settegast,* 36 Tex. 296, 'the weight of authority has established a doctrine that would hold a person who had, through motives of kindness or charity, received an orphan child into his family, whether it be a stepchild or an entire stranger, and treated it as a member of his family, as standing *in loco parentis,* so long as such child should see fit to remain in such family, or so long as it should be permitted to thus remain; and, while that relation should exist, the party who stood *in loco parentis* would be bound for the maintenance, care, and education of such child and would be entitled to his reasonable services without being liable to pay for the same, only in the way of support, unless there had been an express promise to that effect."

2. Evidently, in directing the jury to return a verdict for defendants, the trial court assumed that plaintiff's offering indubitably showed that a parental or family relationship existed between plaintiff and defendants during the time the services were being performed. That is the important question, as the relation in which the parties litigant occupied each to the other bears directly on the question of liability. If defendants during the time the services were rendered stood *in loco parentis* to plaintiff and discharged

their duties in that respect faithfully and in a manner that bespoke parental concern, no obligation upon their part to award compensation for services rendered by plaintiff would attach; but if defendants failed faithfully to discharge the duties they assumed, resulting in mistreatment, abuse or neglect of plaintiff, or failed to give plaintiff such an education and advantages as their position in life would permit, then that relationship which the law fosters and society encourages would not exist and defendants' liability would be obvious.

3. We wish to be understood as saying that reason and good morals recognize a vast difference between parental affection, care and duty owing by foster parents to those who by misfortune are surrendered to their keeping and the omission thereof, which gives rise to neglect, servitude and bondage. In the first instance, no implied contract springs from services rendered or duty performed, while in the other case such a contract is a natural offspring. Bearing in mind this distinction, is there any testimony conducing to show that the parental relationship did not exist? A glance at the evidence will reveal the true situation.

Plaintiff testified in substance that she was treated cruelly by defendants, neglected and abused, receiving but meager education; that she was thinly and roughly clothed and compelled to sleep upon the floor and was not permitted to eat at the same table with defendants; that the time of her day's work was measured only by the working hours of the day; that she performed housework as well as the rough work upon the farm, such as plowing, harrowing and harvesting, doing chores and tending to the stock. Regarding the ill treatment accorded her, plaintiff said: "Yes, he [Alex. Basye] has whipped me. He has kicked me

clear across the house until I have fell. He has followed me in the woodshed and beat me with a board; tried to make me take some things back. I have never done it.''

A member of the defendants' household by adoption, Alice Plummer, testified that plaintiff would get up and prepare breakfast and call the folks, then repair to the barn, milk the cows, feed the stock, and otherwise perform the work of a farm hand. As to the treatment of plaintiff received at the hands of the defendants, the witness testified that defendants were mean to plaintiff; that they would scold and "jaw" her, causing her to cry; that defendant Alex. Basye would slap plaintiff and whip her with a horsewhip and board. The witness also corroborated plaintiff's testimony with respect to the charges of cruelty.

A number of reputable witnesses, neighbors of defendants, living near the city of Corvallis, gave expression to the following state of facts: That they observed plaintiff doing menial work on defendants' farm for a number of years, such as milking cows, working in the harvest field, shocking grain, plowing, harrowing, threshing and doing general farmwork; that she wore rough, coarse clothing and heavy shoes.

From this recital of the testimony, we do not think the lower court could say as a matter of law that the testimony showed conclusively the family relation did exist in its true sense between plaintiff and 'defendants, the obligation to prove that condition being upon defendants, unless no other deduction could be made from plaintiff's case.

Error is found in withholding the case from the jury and granting defendants' motion for a directed verdict.                                        REVERSED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.