Submitted on brief March 29, affirmed April 18, 1916.

## DAILEY v. CREMEN.

(156 Pac. 797.)

**Municipal Corporations—Ordinances—Pleading—Necessity.**

1. An objection that improvements for which liens for labor and materials were claimed were not constructed according to the city ordinances cannot be considered where the ordinance was not pleaded as required by Section 90, L. O. L., nor proved by a certified copy thereof, though city officials testified that the work did not comply to the ordinances.

**Mechanics' Liens—Right to Land—Nature of Improvement—Conformity to Ordinance.**

2. Laborers and materialmen are not bound to know whether permits have been secured for improvements to a building as required by the city ordinance or whether the material is such as can be used in a building of that character.

**Mechanics' Liens—Right to Lien—Defective Material.**

3. The fact that part of the material used in alterations was subsequently torn out and other materials substituted does not defeat the lien of the materialman.

**Mechanics' Liens—Nature of Right—Statute.**

4. A mechanic's lien is not defeated by the fact that the improvement was in violation of the terms of a lease, unless the materialman had such actual knowledge of those terms as to make him guilty of assisting in a fraud on the lessor.

Mechanics' Liens—Nature of Right—Statute.

5.    The right to enforce a mechanic's lien is a special remedy given by statute not contract and arises from the employment of services and the use of material with the owner's consent or knowledge.

Mechanics' Liens—Improvements by Lessee—Knowledge of Owner.

6.    A mechanic's lien attaches to leased property for repairs by the lessee where the materials or labor were furnished for the improvement, and the lessor had either actual or constructive knowledge that it was being made, unless the lessor gives the notice of nonresponsibility provided for by Section 7419, L. O. L.

Mechanics' Liens—Right to—Notice to Owner—Improvement by Lessee.

7.    Where the lessor knew in a general way that improvements were being made, but posted no notice, the lien attaches, though the lessor did not know the details of the improvement.

Mechanics' Liens—Recording Lease—Unauthorized Book—Notice.

8.    A lease recorded in a book termed "Miscellaneous Records," for which the law makes no provision, imparts no constructive notice to one furnishing material to the tenant.

[As to effect of irregularities or defects in recording of instruments, see notes in 30 Am. Dec. 463; 96 Am. St. Rep. 397.]

Mechanics' Liens—Proceedings to Perfect—Notice—Completion of Contract.

9.    Where a mechanic's lien notice stated facts which showed that it was filed within 60 days after the completion of the contract, the statement therein that not less than 60 days had expired from the completion of the "building" does not render it void.

From Multnomah: JOHN P. KAVANAUGH, Judge.

In Banc.    Statement by MR. JUSTICE McBRIDE.

This is a suit by W. A. Dailey, doing business as United Glass & Glazing Company, against Anna M. Cremen and others to foreclose a mechanic's lien upon a certain building situated in Portland, Oregon. The plaintiff claimed a lien for labor and material furnished in the alteration and repair of the building. The Thomas E. Hulme Company claimed a lien for materials furnished and labor performed in installing the plumbing. Sellick & Hoggan claimed a lien for material furnished and labor performed in building and placing metal partitions in the building. They also claimed as assignees of a lien of the Standard Box

& Lumber Company for building material used in the alteration and repair of the building. The defendants A. Johnson & Co., claimed a lien for labor performed and materials furnished in the alteration and repair of the building. L. R. Kollock & Co., and T. B. M. Somerville claimed similar liens. The court found adversely to the lien claims of C. A. Bartz, Pacific States Electrical Company, and Columbia Carriage & Auto Works, and also to the claim of plaintiff, Dailey, and made a favorable finding and decree as to the other claimants, from which decree the defendant Mary Cremen and another appeal. She was the owner of the building, and on the thirty-first day of July, 1912, leased it to one E. H. Norton, giving him possession about September 1, 1912. The lease contains the following provisions in regard to improvements and alterations:

"He, said lessee, will make certain improvements and alterations in and to said building in the time and manner following, to wit: Said improvements and alterations must include the building and installing of safety deposit vaults in the first story of said building and the equipment of said vaults with suitable doors and linings and fixtures and trimmings; and said improvements and alterations may include such other things as said lessee desires. All of said improvements and alterations must be so made and installed as not to weaken or injure said building; and before work is commenced thereon said lessee must submit any plans and specifications therefor to said lessor, and allow her a reasonable time to examine the same, and make any objections she may have thereto. * * If, however, said lessee fully and faithfully performs and complies with all his covenants and agreements herein contained, he may upon the expiration of this lease remove and appropriate to his own use said vaults and the doors and linings and fixtures and trimmings thereof. * * He, the said lessee, will not, except

as in paragraph numbered 'third' of this lease, and hereinafter in this paragraph provided, make any unlawful or improper or offensive use of or suffer or permit any strip or waste of or in or to said leased premises, or make or suffer to be made any alterations in or additions to said building hereby leased: Provided, however, that said lessee may at any time, under the supervision of said lessor and in such manner as shall not weaken or injure or deface said building, make any alteration in or addition to said building which does not cost more than $500 and is proper for or necessary to any lawful use permissible under this lease to which said building is being or is about to be applied: And provided further that said lessee may at any time make any alteration in or addition to said building which does cost more than $500 in the following manner, to wit: (a) Said lessee must first, and before commencing work on said alteration or addition, submit the plans and specifications therefor to said lessor. * * (b) Said lessee must second, and before commencing work on said alteration or addition, furnish a good and sufficient bond, with a surety thereon of the same kind as is required for the bond mentioned in paragraph numbered 'second' of this lease, in and by which bond said surety shall undertake and agree that said lessee shall make and install said alteration or addition in accordance with the plans and specifications therefor, and fully and promptly pay for all labor performed and materials furnished in the making and installation of said alteration or addition; and (c) said alteration or addition must be so made and installed as not to injure or weaken said building.''

There was also a covenant that the lessee would not permit any law of the State of Oregon or ordinance of the City of Portland to be violated upon the premises, and a stipulation that the lessee would keep the premises free from liens, and that the lessor should not in any way be made liable for the cost of any alterations, repairs or additions to the premises.

Submitted on briefs under the proviso of Supreme Court Rule 18: 58 Or. 622 (117 Pac. xi). AFFIRMED.

From Multnomah: JOHN P. KAVANAUGH, Judge.

For appellant there was a brief submitted by *Messrs. Sheppard & Brock.*

For respondents W. A. Dailey and L. R. Kollock & Company, there was a brief over the name of *Messrs. Kollock & Zollinger.*

For respondent Thomas E. Hulme Company there was a brief by *Messrs. Malarkey, Seabrook & Dibble.*

For respondents A. Johnson & Co., Standard Box & Lumber Co. and Sellick & Hogan there was a brief submitted over the name of *Messrs. Lewis & Lewis.*

MR. JUSTICE McBRIDE delivered the opinion of the court.

Whether the stipulation in the lease as to the installation of safe deposit boxes in the building was mandatory or permissive cannot, in the view we take of this case, materially affect the result. From the whole testimony we find the facts to be these: That Mrs. Cremen, through her agent, W. N. Gatens, negotiated a lease of the premises to E. H. Norton, and subsequently put him in possession, such occupancy beginning about September 1, 1912, and on November 16, 1912, Norton forfeited his lease and was ejected from the premises; that all the alterations and repairs concerning which there is any dispute had been made at that date, and with the actual knowledge of defendant Mary Cremen and her agent; that she did not give the notice required by Section 7419, L. O. L., and the building is therefore subject to such liens, unless by

reason of matters hereinafter discussed the attempt to fasten them upon the property has become nugatory.

1, 2. One of the objections to the validity of some of the liens is that the work was performed in a manner and with materials not permitted by the ordinances of the City of Portland, but said ordinances are not pleaded as required by Section 90, L. O. L., nor proved by any certified copy. There is testimony of the officials that certain portions of the work did not comply with the ordinances, and was torn out and replaced for that reason, and that other parts of the work were commenced before permits were issued, but this testimony seems to be merely the construction the witnesses place upon the ordinances, and is incompetent. In any event, we do not think materialmen and laborers are bound to know whether permits have been issued or whether the material furnished is to be used in a manner or is of a character which, under the circumstances, cannot be used in a building. That is a matter to be settled between the owner or lessee of the building and the city authorities, and in the absence from the record of the ordinance and building regulations of the City of Portland we are not inclined to consider the objection.

3–5. The fact that a portion of the material used in the alterations made in the building was subsequently torn out and other materials substituted can make no difference as to the right of the lienor to recover. He furnishes material "to be used" on the projected improvement, and, if it is actually furnished and used, it is not his fault that it is so used or of such a character that it is afterward torn out and other material substituted. Neither is it material that the improvement made was in violation of the terms of the lease, unless, perhaps, in a case where the party furnishing

the material or labor has such actual knowledge of these terms as to make him guilty of assisting in the perpetration of a fraud upon the lessor. The right to enforce a lien is "a peculiar, particular and special remedy given by statute and circumscribed by the circumstances of its own creation": 14 Am. & Eng. Ency. of Law, p. 5. It is created by statute and not from contract, and arises from the employment of services and the use of materials with the owner's consent or knowledge.

6. Under our statute these things must concur to authorize a lien against the owner of a building for labor or materials and by the lessee in making repairs or alterations in a building: First, the materials or labor must be furnished for the purpose of the improvement; second, the lessor must have had either actual or constructive knowledge that the improvement was being made. If these concur, the owner is liable, unless he gives the notice of nonresponsibility required by the statute.

7. As before remarked, we are of the opinion that the owner of the building knew in a general way at least that improvements and changes were being made in the building. That some changes and improvements were contemplated and must of necessity be made is evidenced from the very nature of the case. It is probable she was not aware of all the details, but we think this is not necessary. Being put upon notice that changes of some character were being made, it was her duty, if she did not consider the character of her tenant or the $1,000 deposit made in lieu of an undertaking to protect from liens a sufficient guaranty, to post the notice, which would have absolved her from all responsibility.

8. The lease in this case was not recorded in any legal record-book of the county, but in a book termed "Miscellaneous Records," for which the law makes no provision, and which imparts no constructive notice to anyone, and, so far as these claimants were concerned, its contents were secret. The comments of the court in the case of *Mosher* v. *Lewis,* 10 Misc. Rep. 373 (31 N. Y. Supp. 433), which, though not identical, is in many respects similar to the case at bar, are of value in this connection. Speaking of the effect of conditions in the lease as affecting the right to a lien, the court says:

"The learned trial judge thought the present case distinguishable from those above referred to because of the plaintiffs' alleged notice of the fact that, pursuant to agreement with the lessees, at whose request and upon whose promise to pay the plaintiffs performed the services and furnished the materials, the lessors and owners defendant were in no manner to be answerable for the improvements or repairs. Neither in *Otis* v. *Dodd* [90 N. Y. 336] nor in any other of the cases referred to did it appear that the lienors had, or did not have notice of a like provision in the agreement under which the persons causing the improvements or repairs to be made were in possession of the premises; hence the circumstance of such notice is to be taken as immaterial. But, though the determination of the last-mentioned proposition may not be involved in the former decisions, it is our opinion that such notice cannot impair the right to a lien as against the lessors and owners, defendant's, interest in the premises. The right to such a lien did not exist at common law: *Spruck* v. *McRoberts,* 139 N. Y. 193, 197 [34 N. E. 896]; *Benton* v. *Wickwire,* 54 N. Y. 226; *Mushlitt* v. *Silverman,* 50 N. Y. 360; *Freeman* v. *Cram,* 3 N. Y. 305; *Grant* v. *Van Dercook,* 8 Abb. Pr. (N. S.) 455; *Huxford* v. *Bogardus,* 40 How. Pr. 94. It 'is a peculiar, particular and special remedy given by statute, founded and circumscribed by the terms of its

own creation': 15 Am. & Eng. Ency. of Law, 5. It is created by the statute, but arises, not from contract, but from the employment of services and the use of materials in improvements or repairs with the 'owner's' consent, though it may be incidental to a contract: 15 Am. & Eng. Ency. of Law, 65, note 5; *Frost* v. *Ilsley*, 54 Me. 345, 351. The present mechanic's lien law does not prescribe ignorance of the mechanic or materialman of the 'owner's' agreement with another, whereby the latter has assumed the expense as a condition of the right to acquire the lien; hence we may not annex it. The determinative fact is that the services were employed, or the materials furnished, with the 'owner's' consent. In *Miller* v. *Mead*, 127 N. Y. 544, 549 [28 N. E. 387, 13 L. R. A. 701], it was held that the 'owner' and 'contractor' cannot by agreement among themselves, to which the lienor was not a party, and of which he had no notice, subordinate the lien of a mechanic or materialman to the 'owner's' claim for advances. Whether the lienor's rights, as such, would have been impaired if he had notice of the provisions of the agreement, the court did not undertake to say. However, the question of notice cannot arise in the present case. That the plaintiffs did not have actual notice of the lessees' covenant to make the improvements and repairs at their own expense appeared from unchallenged proof, if, indeed affirmative proof of non-notice was requisite to the plaintiffs' case; and constructive notice to the plaintiffs in favor of the lessors and owners defendant did not arise from the fact of the record of the lease.''

In that case the statute seems to have required the "consent" of the owner to the improvement. Our statutes require that the owner shall have "knowledge" of them, but the principle involved is the same. We have examined the cases cited by learned counsel for appellant, but the statutes are so variant and the holdings of different courts upon similar statutes are so inharmonious that it is impracticable in the limits

of this opinion to discuss them. In this state the holding upon this subject has been uniform that where materials are actually furnished and used by the lessee in the construction or alteration of a building, and the landlord has knowledge of that fact and fails to give the notice prescribed by the statute, his interest in the property is subject to the lien. In fact, the courts seem to have assumed as a matter of course that the statute is subject to no other construction: *Title Guarantee Co.* v. *Wrenn,* 35 Or. 62 (56 Pac. 271, 76 Am. St. Rep. 454); *Nottingham* v. *McKendrick,* 38 Or. 495 (57 Pac. 195, 63 Pac. 822); *Marshall* v. *Cardinell,* 46 Or. 410 (80 Pac. 652); *Chenoweth* v. *Spencer,* 64 Or. 540 (131 Pac. 302, Ann. Cas. 1914D, 678).

9. It is further urged that the liens of Hulme & Co. are void upon their face. It is claimed that the statement in the first notice of lien that the 60 days had not elapsed since the completion of the building, and in the second notice that 30 days had not passed since the completion, renders both liens void, for the reason that the law required the lien of an original contractor to be filed within 60 days after the completion of the contract. The notices disclose the latter fact upon their face. The first lien was filed December 20, 1912, and stated facts showing that the contract was completed on November 19, 1912, and the second lien contained language declaring that the contract in that instance was completed November 15, 1912, and the notice of lien filed January 10, 1913; both being within 60 days from the completion of the contract. In addition to this, we question the correctness of the *dictum* in *Equitable Savings & Loan Assn.* v. *Hewitt,* 55 Or. 329 (106 Pac. 447), wherein it was held that a lien notice which stated that 60 days had not elapsed since the "completion of the building," instead of the "com-

pletion of the contract," was void. An examination of the opinion in that case shows that the decision of this question was not necessary, as that opinion had already held the lien void upon other grounds, and an examination of the briefs indicates that the question was not discussed therein. Section 7420, L. O. L., prescribes what the lien notice shall contain in the following language:

"A claim containing a true statement of his demand, after deducting all just credits and offsets, with the name of the owner, or reputed owner, if known, and also the name of the person by whom he was employed or to whom he furnished the materials, and also a description of the property to be charged with said lien, sufficient for identification, which claim shall be verified by the oath of himself or of some other person having knowledge of the facts."

It would seem that a compliance with these requirements is sufficient, and they are all observed in the lien notices now under discussion: *Allen* v. *Elwert,* 29 Or. 428, 438 (44 Pac. 824, 48 Pac. 54) ; *Cook* v. *Rome Brick Co.,* 98 Ala. 409 (12 South. 918) ; *Houston* v. *Wetzel,* 69 W. Va. 682 (72 S. E. 786).

The decree of the Circuit Court is affirmed.

AFFIRMED.