No. 26,183.

MILDRED ROBINSON, a Minor, by ART ROBINSON, Her Next Friend, *Appellee*, v. WILLIAM JOHNSON, *Appellant*.

SYLLABUS BY THE COURT.

WORK AND LABOR—*Persons in Family Relation—Implied Contract for Services.* The evidence is held to show that the plaintiff's relations with a family, against one member of which she sought judgment for services performed, were such as to prevent a contract to pay therefor being implied from their being performed at his request.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed November 7, 1925. Reversed.

*Alvin R. Springer* and *Walter Reed Gage,* both of Manhattan, for the appellant.

*C. A. Leinbach,* of Onaga, for the appellee.

The opinion of the court was delivered by

MASON, J.: Mildred Robinson sued William Johnson for $1,500 as the reasonable value of outdoor work done by her upon his farm at his instance during a period of five years. She recovered a judgment for half the amount, from which the defendant appeals.

The plaintiff does not claim there was an express contract to pay her, but stands upon the proposition that an implied obligation to do so arises from his request for and acceptance of her services. The defendant's claim is that because of the relations of the parties —the attitude in which they stood toward each other—no such obligation arose, he occupying the position of a parent toward her. From the time the plaintiff was about ten years old she lived—as she says—with the defendant's wife. The defendant, however, lived in the same house. The services for which recovery is sought were rendered during the second half of the ten-year period. The rule is familiar that even in the absence of any relationship by blood or marriage there is no implication of a promise to pay for domestic services rendered by one who is a member of the household. (40 Cyc. 2816; 11 R. C. L. 209-10; Notes, 11 L. R. A., n. s., 887, 888; 10 A. L. R. 139; *Wyley v. Bull,* 41 Kan. 206, 20 Pac. 855.) The plaintiff's brief quotes this language from the Kansas case just cited as showing the contrary:

Work and Labor, 40 Cyc. p. 2851; 11 L. R. A., n. s., 873; 28 R. C. L. 680, 681.

"About the only difference in the rule of law as between relatives and the rule of law as between strangers living together as one family is, that as to relatives no contract for compensation to be made on either side will be implied, but any contract claimed to exist must be specifically and affirmatively shown, while as between strangers a contract for compensation will be implied unless the contrary is shown either expressly or impliedly, from the affirmative circumstances expressly shown to exist in the case." (p. 209.)

As the context clearly shows, however, this means merely that where the parties are relatives a presumption arises from that fact that payment is not expected on either side, while in the case of nonrelatives that presumption arises only after the living together as one family has been established. This plainly appears from the sentence immediately following that just quoted:

"In all cases, however, . . . when it is shown that the parties, though strangers to each other, have nevertheless lived together as one family, as parent and child, for instance, and that no express contract was made for compensation to either party, none on the one side for wages, and none on the other side for board, lodging, clothing, schooling, spending-money, etc., then the same rule will apply as though the parties were near relatives." (p. 209.)

It has been said in an action similar to this:

"If defendants during the time the services were rendered stood *in loco parentis* to plaintiff and discharged their duties in that respect faithfully and in a manner that bespoke parental concern, no obligation upon their part to award compensation for services rendered by plaintiff would attach; but if defendants failed faithfully to discharge the duties they assumed, resulting in mistreatment, abuse or neglect of plaintiff, or failed to give plaintiff such an education and advantages as their position in life would permit, then that relationship which the law fosters and society encourages would not exist and defendant's liability would be obvious." (*Ingram v. Basye,* 67 Ore. 257, 261.)

That view need not be accepted or rejected here, for it was not presented in the petition, and is not relied upon in the brief of the plaintiff, although there was evidence tending to show that she was not well cared for, properly clothed, or given suitable social or educational advantages.

The plaintiff's pleading and testimony undertake to remove the case from the class where no implied contract to pay arises, upon the theory that the defendant and his wife, while occupying the same four-room house, did not constitute a single family; that two separate establishments were maintained, and the plaintiff was a part of the wife's and not of the husband's. The plaintiff answered "yes" to questions whether the defendant and his wife had their

Robinson v. Johnson.

separate property and whether they kept their finances separately, and "no" to a question whether they lived together as husband and wife. She testified that she carried eggs to the neighbors to sell to get money for her clothing. She was asked why she didn't send the eggs to town by the defendant and answered: "He was so mean to her, would not get her anything." She said the defendant never bought her anything; that he wanted her to wear his cast off clothing and she refused; that he would buy shoes at the second-hand store, and she had to take his castoffs; that she wore under-clothing made out of flour sacks.

A part of her cross-examination reads:

"You went over there and stayed in the Johnson home? Yes.

"Mrs. Johnson took you into her home and gave you a place there? Yes.

"On the farm owned by William Johnson? Yes.

"Mr. and Mrs. Johnson were living together? Not when I went there, they went together when I went there.

"Those two people came after you together? Yes; but Mr. Johnson went to Hunt's after his wife; she was staying at Hunt's.

"She was at her mother's, and he got her, and when they came back they got you and took you to their place? Yes.

"At the Johnson home they had live stock? They had a few head.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"During the first entire five years at the Johnson place they lived there together? While I stayed with them.

"The family consisted of Mr. and Mrs. Johnson and yourself? Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"Mr. Johnson provided groceries and necessities about the house? He pro-vided a few.

"He provided enough so that you lived there and were well and healthy? That is natural for me.

"Nobody else provided any food or clothing for you those five years you were there? No.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"During the entire time you were there you did your share of work around the house, and when work was pressing helped on the farm? Never did much work about the house.

"Who did the work? His wife.

"You helped most outdoors? Yes.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"During the time you were living there and living on the farm and working there, you were living there as a member of the family? Not exactly.

"Why not exactly? I did not know when the time would come when I would have to get out."

41—119 Kan.

We do not regard the evidence outlined, alone or in connection with other testimony given, as sufficient to sustain a finding of such a separation of the Johnson family as to render the husband liable for services done at his request, on the theory that the plaintiff was not a member of his family, but of his wife's. Moreover that theory was not submitted to the jury. The verdict was reached upon an instruction making the case turn upon a matter to which we have not as yet referred—a claim on the part of the plaintiff that for the second five years during which she stayed at the Johnson place her position there was defined by a contract between herself and Mrs. Johnson, under which she was to do certain work, and that the services for which she now seeks compensation were outside of those covered by this agreement. This issue is more or less involved with that already discussed. The instruction reads:

"If you find from a preponderance of the evidence in this case that the plaintiff, Mildred Robinson, went into the home of the defendant and his wife under an agreement with the wife of the defendant, that she was merely to do the housework and make her home with them for her board and clothing, and that while so thereat, she performed labor for the defendant, William Johnson, at his request outside of the household work, then I instruct you that plaintiff would be entitled to recover the reasonable value of the services so performed for the defendant William Johnson, if any.

"On the other hand, if you should find from the testimony in the case that the plaintiff, Mildred Robinson, went into the home of defendant and his wife to make it her home as one of the family, either by agreement with the wife of the defendant, or otherwise, and that she was treated as a member of said family, and that there was no agreement that she was to receive any compensation beyond her keep as a member of such family, nor was the defendant to receive any compensation for plain*;ff's board or keep, and no accounts were kept between them, then the plaint f would not be entitled to recover in this action and your verdict should be for the defendant."

The plaintiff testified to this effect: After she had lived at the Johnson place for five years she told Mrs. Johnson she would have to get out and work for clothes; that she would have to have money some way; that she would have to have money and clothing—was getting at an age where she had to have something; that she would leave unless some other arrangement was made. Mrs. Johnson urged her to stay and said she would go in partnership with her stuff. The arrangement provided for the plaintiff's selling a part of the eggs and having a part of the livestock. The plaintiff remained for five years more under this agreement. She made no arrangement with the defendant at all. He did not know of that made with his wife. Mrs. Johnson owned most of the cattle. Johnson owned a few head

Robinson v. Johnson.

of cattle, horses, mules and a few hogs. Mrs. Johnson bought such clothing for the plaintiff as she had. When the plaintiff left the Johnsons, she had a little poultry and a half interest in a lot in Manhattan, bought from the stock Mrs. Johnson and she had raised. There was at the farm two two-year-old heifers, a cow and a colt in which she owned a half interest, which, however, at the time of the trial she had not received. Parts of her cross-examination follow:

"You never asked Mr. Johnson for any pay, did you? I was not supposed to work for him like I was.

"Did you ever ask him to pay you anything for your work? No.

"Tell us, did you ask him for the $1,500 you afterward sued for? I said if he did not allow me to get my stock I would get even some other way.

"You never made any demand on Johnson for this money until you filed this suit and sent the sheriff with summons? No.

"That is the first time you advised him of your contract to get a value for your services for five years? Yes.

"How did you earn this stock? By taking care of it.

"While Johnson owned the farm and raised the crops with the help that you gave him, it was fed to the stock owned by all of you? Yes.

"How many head of stock did you and Mrs. Johnson own jointly? Around nine or ten head."

We see no tenable theory upon which the plaintiff is entitled to recover. The fact that she has not received what she was entitled to under her contract of course can avail her nothing in this action. The contract made at the end of the first five years of her living with the Johnsons seems to have changed her situation there only by giving her an interest in the stock owned by Mrs. Johnson, so that in the future she was working in part for herself. She was as much a member of the family as ever. There was no more room for an implication that during the second five years she was to receive more than Mrs. Johnson had agreed to give her than there had previously been for an implication that she was to receive pay for her services. There is nothing to show that the services for which payment is now sought were outside of those contemplated in the arrangement by which she was to have an interest in a part of the stock.

A reversal is ordered, with directions to render judgment for the defendant.