Argued January 18, reversed February 7, rehearing denied March 6, 1928.

## LEO ROBERTS *v.* CARL GERLINGER.

(263 Pac. 916.)

**Mechanics' Liens—Plaintiff Held Entitled to Lien, Where Defendant Permitted Him to Continue Well Drilling and Did not Post Notices of Nonresponsibility for Work (Or. L., §§ 10191, 10192, and § 10194, as Amended by Laws 1923, p. 191).**

1. Plaintiff, alleging that defendant engaged him to drill and construct well for water on defendant's premises, was entitled to foreclose lien therefor, under Sections 10191, 10192, and Section 10194 (Or. L.), as amended by Laws of 1923, page 191, where defendant, without protest, permitted him to continue drilling after he knew he was on his land at work and failed within three days after knowledge of construction of well to give or post notice that he would not be responsible for work on his land.

**Work and Labor—On One's Performing, With Other's Knowledge, Service of Character Usually Charged for, Without Other's Dissent, Promise to Pay Reasonable Value is Implied.**

2. Where one performs for another, with the other's knowledge, service of a character usually charged for, and person for whom

---

1. Mechanics' liens on realty for improvements with consent but not at expense of owner of realty, see notes in 11 Ann. Cas. 1082; 19 Ann. Cas. 734; Ann. Cas. 1916C, 133; Ann. Cas. 1918C, 1019. See, also, 18 R. C. L. 907. Statutes giving lien where owner with knowledge of the improvement fails to give notice of nonliability, see note in 23 L. R. A. (N. S.) 618; L. R. A. 1917D, 584.

2. See 6 R. C. L. 587; 28 R. C. L. 668.

service is performed expresses no dissent or avails himself of service, a promise to pay reasonable value of service is implied.

**Contracts—Under Allegation That Defendant Engaged Plaintiff to Drill Well on Promise to Pay Reasonable Value, Plaintiff Could Recover Value of Materials Delivered.**

3. Under allegation that defendant engaged plaintiff to drill well and promised to pay reasonable value of materials used, of labor and equipment necessary to construct well, plaintiff could recover for reasonable value of materials and labor performed in drilling well.

---

Contracts, 13 C. J., p. 750, n. 72.
Mechanics' Liens, 40 C. J., p. 452, n. 12, p. 469, n. 46.
Work and Labor, 40 Cyc., p. 2809, n. 13.

From Polk: W. M. Ramsey, Judge.

Department 2.

This is a suit to foreclose a lien for the sum of $536.40 for drilling a well upon a certain tract of land in Polk County owned by Carl Gerlinger, the defendant. The cause was tried before the court and a decree rendered in favor of defendant. Plaintiff appeals.     Reversed. Rehearing Denied.

For appellant there was a brief and oral argument by *Mr. Wm. W. Harcombe.*

For respondent there was a brief and oral argument by *Mr. Oscar Hayter.*

BEAN, J.—The complaint is in the usual form. Plaintiff alleges that the defendant engaged him to drill and construct a well for water upon the premises of the defendant and furnish necessary material and equipment therefor.

The defendant's answer admits the ownership of the property described, the filing and recording of the notice of claim of lien and denies the other allegations of the complaint. Upon the trial the plaintiff testified to the effect that prior to the commencement

of the work the same had been frequently discussed between the plaintiff and defendant; that prices prevailing upon such work had been quoted and all arrangements made for the plaintiff to do the work. That the prices actually charged were reasonable for work of that character; that plaintiff commenced the work on the well September 20, 1924, and continued until the next October 11th, and drilled a well six inches in diameter with a five and five-eighth inch casing for the first thirty feet. The well was drilled to a depth of 204 feet.

The defendant denies that he employed the plaintiff to do the work. He states that they had conversation in regard to the matter, but that he did not authorize him to do the work. It appears that three or four days after the plaintiff commenced the work on the well and had drilled to the depth of thirty or forty feet, the defendant went to the premises and saw the plaintiff's outfit there and inquired for plaintiff and was told by a tenant on the fifty-acre farm that the well driller was not there then. Defendant states that he attempted to call the plaintiff up over the telephone but was not able to do so. He left no word with the tenant in regard to the work, and wrote no letter or notice, and made no objections to the plaintiff to the well being drilled on the place and the next day left town and was away for several days, until October 11th, when he went to the farm where the plaintiff was drilling the well and was there an hour or two. He inquired whether they had gotten any water and plaintiff told him that they had some water, he did not know how much. He had not tested it thoroughly.

It appears that the water was salty and not fit to drink. At the time of the trial the well was full of water but had not been pumped out or thoroughly

tested to ascertain whether it was suitable for domestic purposes or not.

When the defendant was there where the work was being done on October 11th, he told the plaintiff that he did not feel like he wanted to go much deeper than that, at that time, and told him to stop drilling and pull out the drill. Plaintiff testifies that at that time the defendant did not question his contract or authority to drill the well and made no objections to the well being drilled at that place.

On October 12th the defendant, with another man, went with plaintiff to the farm, when, as plaintiff testifies, "he (defendant) said I had drilled away below the vein to rob him." Soon afterward the plaintiff went to see the defendant at his place of business in Dallas, Oregon, to get pay for the drilling of the well. Defendant requested plaintiff to furnish him a bill of the work, which he presented to the defendant soon afterward and the defendant found some fault with some of the items and said "he didn't know whether he had all that money or not." Until then the defendant had not questioned the authority of the plaintiff to construct the well. The defendant sent plaintiff to his attorney to settle the matter.

Plaintiff's evidence sustains the other material allegations of the complaint in regard to the reasonable value of the services and material furnished, the steps taken to perfect the lien, and the reasonable value of the attorney's services in this suit.

Defendant testified to the effect that he told the plaintiff he was planning on getting a well drilled "later on"; that he was called to California and after he returned he went to the farm and tried to find the plaintiff and saw his "rig," but could not find him; that he was called out of town again; when he

returned he was informed that the well was down 200 feet and no water; that he drove down to the farm and said to plaintiff "Leo, what is the matter?" It was about time to quit work and he did not say much. He called plaintiff up on the phone that evening and arranged to go down to the farm the next day. He states that he has two wells on the place; that last year one went dry and one of them smelled from brick in the well.

After the well was drilled he cleaned out the old well and did not use the new well. On cross-examination the defendant states he figured he could go down twenty-five or thirty feet for a new well or have the old well cleaned out. He does not remember any of the first conversations testified to by plaintiff. At the time they measured the well the water was about thirty feet from the top of th'e casing. The defendant appears to have been dissatisfied because the well was drilled to a greater depth than he expected.

1. We think the conduct of the defendant in permitting the plaintiff to continue drilling the well after he states he knew he was there at work without any protest and without suggesting that the construction of the well was not authorized and directed by him at any time until the defendant sent the plaintiff to his attorney to settle the matter; and his failure within three days after he obtained knowledge of the construction of the well to give or post notice in writing in some conspicuous place that he would not be responsible for the work upon the land, and the other circumstances of the case preponderate the testimony in favor of the plaintiff.

Section 10191, Or. L., provides in part as follows:

"Every mechanic, artisan, machinist, builder, contractor * * performing labor upon or furnishing material, or transporting or hauling any material of

124 Or.—30

any kind to be used in the construction, alteration or repair either in whole or on any part of any building * * or in digging, drilling, driving or boring any well, shall have a lien upon the same for the work or labor done or transportation of material furnished at the instance of the owner of the building or other improvement, or his agent * * ."

Section 10192, Or. L., is in part as follows:

"The land upon which any building or other improvement as aforesaid, shall be constructed, together with a convenient space about the same or so much as may be required for the convenient use and occupation thereof * * shall be subject to the liens created by this act, if, at the time the work was commenced or the materials for the same had been commenced to be furnished, the said land belonged to the person who caused said building or other improvement to be constructed, altered or repaired; * * ."

Section 10194, Or. L., as amended by Chapter 132, General Laws of Oregon, 1923, page 191, reads thus:

"Every building, or other improvement mentioned in Section 10191, except improvements made by any person other than the landowner in drilling or boring for oil or gas, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this act, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

In *Dailey* v. *Cremen,* 80 Or. 183, 189 (156 Pac. 797), Mr. Justice McBRIDE, speaking for this court, records the following language:

"The right to enforce a lien is 'a peculiar, particular and special remedy given by statute and circumscribed by the circumstances of its own creation' (14 Am. & Eng. Ency. of Law, p. 5). It is created by statute and not from contract and arises from the employment of services and the use of materials with the owner's consent or knowledge.

"Under our statute these things must concur to authorize a lien against the owner of a building for labor or materials and by the lessee in making repairs or alterations in a building; First, the materials or labor must be furnished for the purpose of the improvement; second, the lessor must have had either actual or constructive knowledge that the improvement was being made. If these concur the owner is liable, unless he gives the notice of nonresponsibility required by the statute."

2. Where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the person for whom the service is performed expresses no dissent or avails himself of the service, a promise to pay the reasonable value of the service is implied: 6 R. C. L., p. 587, § 6.

3. The plaintiff alleges that the defendant engaged him to drill the well, and the defendant promised and agreed to pay the reasonable value of the materials used, the reasonable value of the labor and use of the equipment necessary to construct said well. Under this allegation we think plaintiff can recover for the reasonable value of the materials and the labor performed in drilling the well: 13 C. J., p. 750, § 910; *Donovan* v. *Harriman,* 139 App. Div. 586 (124 N. Y. Supp. 194).

The decree of the Circuit Court will be reversed and one directed to be entered in favor of the plaintiff, foreclosing the lien for the sum of $536.40, with interest thereon at the rate of 6 per cent per annum, from the eleventh day of October, 1924, and for the sum of $100, a reasonable attorney's fee in this suit, as prayed for in plaintiff's complaint.

Reversed. Rehearing Denied.

Coshow and Rossman JJ., concur.

Rand, C. J., dissents.