Argued February 28; affirmed March 5, 1940

McKEE *v.* CAPITOL DAIRIES, Inc., ET AL.

(99 P. (2d) 1013)

[ 1 ]

Department 2.

*Robin D. Day*, of Salem, for appellant.

*W. W. McKinney*, of Salem (Donald A. Young, of Salem, on the brief), for respondents.

KELLY, J. On the 11th day of July, 1939, this case was instituted by Mr. S. J. McKee, now deceased. On or about the 24th day of August, 1939, Mr. McKee died. On August 29, 1939, his widow, Gertrude Dickinson McKee, was appointed administratrix of his estate;

and upon September 13, 1939, Mrs. McKee, as such administratrix, was substituted as plaintiff herein.

During the trial in the circuit court, it appeared from plaintiff's testimony that the equipment was furnished and the services performed, for which recovery is sought herein, by plaintiff's intestate pursuant to an agreement with defendants, which created the relation of joint adventurers between them.

We quote from plaintiff's testimony on cross-examination:

"Q. Now do you remember the day when you and Mr. McKee talked with Mr. Hurley and Mr. McKenney at the dairy? Remember when that was?

A. It was the latter part of June, I wouldn't say just what day, and Mr. Hurley said he would furnish the turkeys and feed and Mr. McKenney would furnish the range and Mr. McKee do the work. Mr. McKee would do the over-seeing, would do all the over-seeing, furnish the brooding and over-see the birds through."

\* \* \* \* \*

Plaintiff testified that during the conversation above referred to by her, nothing was said about the pay that her late husband was to receive.

We quote further from her testimony on cross-examination:

"Q. You have told us that. You said at that time there was nothing said as to what Mr. McKee was to have?

A. There was not.

Q. Mr. Hurley said he would take care of the money and all and would run the turkeys on Mr. McKenney's ranch and Mr. McKee was to use his brooder house and his equipment and see the flock through the summer.

Q. You have told us that.

A. At that time—they were to divide the profits. If they went behind they were each to pay their part and if they made anything, they were to divide.

Q. Was that discussed that first time when you were at the dairy?

A. That was the beginning of these turkeys.

Q. What was said about what Mr. McKee was to receive for this work in dollars and cents?

A. One-third of what they got on those turkeys when sold.

\* \* \* \* \*

Q. (By Mr. McKinney) Now tell the jury, what, if any, other conversations were had between Mr. McKee in your presence, and Mr. Hurley and Mr. McKenney, in regard to what he was to get for doing this work?

A. He was supposed to have one-third of what was made on the turkeys raised on McKenney's ranch.

Q. Did they have any other agreement on what was to be paid, on that day, do you remember?

A. They had not.

Q. That is the agreement he operated under?

A. He did.

Q. And no other agreement?

A. No other agreement.

\* \* \* \* \*

The Court: What this jury are entitled to find out is, was the contract—were these turkeys taken care of on the theory they were to furnish certain things and your husband and you were to look after them and then when sold, why you folks were to get one-third the profits?

A. One-third the profits. That is exactly it, and they denied it all, and that is the reason I came to them for wages, I figured we should have the wages."

■ "A joint adventure is analogous to, but not identical with, a partnership. It has been defined as, 'An association of two or more persons to carry out a single

business enterprise for profit' (Fletcher v. Fletcher, 206 Mich. 153), and is 'usually but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years.' 33 C. J., p. 842. 'This name seems to be applied to those special combinations of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation. All such persons are partners or *quasi* partners, rather than joint or common owners; * * * with essentially the rights and disabilities which pertain to the partnership relation, although less comprehensive or permanent in the scope intended.' Schouler on Personal Property (5 ed.), § 167a. See, also, Salem-Fairfield Telephone Assn. v. McMahan, 78 Or. 477 (153 Pac. 788), and Campbell's Gas Burner Co. v. Hammer, 78 Or. 612, (153 Pac. 475)." Elliott v. Murphy Timber Co., 117 Or. 397, 244 P. 91.

■ "Generally speaking, it may be said that practically the only distinction between a joint adventure and a partnership is that the former relates to a single transaction * * * while the latter relates to a general business of a particular kind." Annotation, 48 A. L. R. 1060, citing authorities.

"Though a joint adventure is not, in a strict legal sense, a copartnership, the rules and principles applicable to the partnership relation govern and control the rights, duties, and obligations of the parties as to each other." Ibid, citing Church v. Odell, 100 Minn. 98, 110 N. W. 346.

■ "The rule is quite general that an action at law will not lie in favor of one or more partners or their representatives against one or more copartners or their representatives upon a demand growing out of a partnership transaction until there has been a settlement of account and a balance struck: 15 Pl. & Pr. 1005; Wilson v. Wilson, 26 Or. 251 (38 Pac. 185); McDonald v. Holmes, 22 Or. 212 (29 Pac. 735)." Simpson v. Miller, 51 Or. 232, 235, 94 P. 567; See also Li Sai Cheuk v. Lee Lung, 79 Or. 563, 146 P. 94, 156 P. 254.

Many authorities supporting this rule, including these, are collated in Vol. 21, A. L. R., p. 34. A supplementary annotation is given in Vol. 58, page 621, ibid.

 We are aware that an execption to the rule may be recognized when a partnership is formed to carry out a single transaction or venture, which is fully closed and does not involve complicated accounts, one partner may maintain an action at law against his copartner for his share of the profits or losses of the venture without first having a formal accounting; but neither the pleadings nor the proof herein disclose such a state of facts. While there are other exceptions to the rule unnecessary to record here, the instant case does not fall within the scope of any of them.

As stated, plaintiff's testimony was to the effect that there was the relationship of joint adventurers between the parties defendant and plaintiff's intestate with regard to the transaction upon which plaintiff seeks a recovery.

The case of *Ingram v. Basye*, 67 Or. 257, 135 P. 883, cited by plaintiff, holds that a contract to pay is presumed from the acceptance of beneficial labor, unless the relationship of the parties is such as to forbid the presumption. In that case, this court held that the menial services performed by plaintiff and the mistreatment accorded plaintiff by defendants during the 34 years of plaintiff's life in the home of defendants which began when plaintiff was two years old and continued until she had arrived at the age of 36, precluded a holding as a matter of law that the family relation existed between plaintiff and defendants forbidding the presumption of a contract on defendants' part to pay plaintiff for her labor. In the case at bar, plaintiff, by her own testimony, establishes the relationship of joint adventurers between her intestate and defendants.

In the case of *Roberts v. Gerlinger*, 124 Or. 461, 263 P. 916, also cited by plaintiff, no relationship between plaintiff and defendant existed except that with the knowledge of defendant plaintiff drilled a well on defendant's premises.

In *Estate of McLain*, 126 Or. 456, 270 P. 534, also cited by plaintiff, this court, speaking through Mr. Chief Justice RAND, applied the rule recognized in *Ingram v. Basye*, supra.

We quote from the McLain case:

"The general rule is that where one person at the request of another performs beneficial services for him, unless it is agreed or it can be so inferred from the circumstances that the services were to be rendered without compensation, the law, *in the absence of any express contract,* will imply a promise on the part of him for whom the services were rendered to pay for them what they were reasonably worth." (Italics supplied.)

As stated, in the case at bar, there was an express contract between the parties by which the relationship of joint adventurers was established.

In *Reichle v. Willamette Tribe, No. 6*, 118 Or. 357, 246 P. 214, cited by plaintiff, the court held that it was not necessary for plaintiff to prove a specific request by defendant that plaintiff perform the work and furnish the material for which plaintiff recovered judgment. Proof that the work was performed and the material furnished and that the articles constructed from it were delivered to defendant, were accepted by it and became a part of its lodge property, this court held to be sufficient to establish a prima facie case. No question of the effect of an agreement establishing the relationship of joint adventurers was involved.

In *Toy v. Gong*, 87 Or. 454, 170 P. 936, cited by plaintiff, the question of the existence or nonexistence of a partnership between the parties had been litigated in equity, and, there, it was determined that no such relationship existed.

*William v. Ledbetter*, 132 Or. 145, 285 P. 214, cited by plaintiff, was an action upon an express contract definitely fixing the method of determining the amount to become due to plaintiff thereunder. The case was decided upon the point that testimony of usage was not admissible to alter or change the terms of an express contract. It sheds no light upon the questions involved in the instant case.

■ In support of her contention that a contract of employment will be presumed when services are rendered by one person for another, plaintiff cites Vol. 2, Nichols Applied Evidence at page 1932, § 1, and at page 1936, § 20. The cases cited in support of the rule stated in these sections recognize that this presumption is applicable only in the absence of evidence to the contrary. In fact, section 20, supra, so states.

The rule quoted by plaintiff from Nichols Applied Evidence, Vol. 4, p. 3451, § 13, to the effect that a partnership cannot be established by the declarations of one of the alleged partners, has no application to the case at bar, because plaintiff herself testified to the facts disclosing the relationship of joint adventurers between her intestate and defendants.

■ *West v. Eley*, 39 Or. 461, 65 P. 798; *Toy v. Gong*, supra; *Hill v. Wilson*, 123 Or. 193, 261 P. 422; *Inland Construction Co. v. Pendleton*, 116 Or. 668, 242 P. 842, and *Fells v. Vestvali*, 2 Keys (N. Y.) 152, deal with contracts definitely fixing the amount to become due to plaintiff upon full performance thereof or expressly

prescribing a method of definitely determining such amount. In the case at bar, the contract under consideration, being one of joint adventure, is not such a contract. The amount to become due to plaintiff's intestate thereunder could not be known in the absence of an accounting and the striking of a balance due. This is within the jurisdiction of a court of equity only.

We think that plaintiff could recover only the amount stipulated to be paid. *Sinnock v. Zimmerman,* 132 Or. 137, 284 P. 838. As stated, it will require recourse to equity by suit for an accounting to determine what that amount is.

For these reasons, we hold that there was a failure of proof by plaintiff, and the circuit court committed no error in sustaining defendants' motion for an involuntary nonsuit.

The judgment of the circuit court is affirmed.

RAND, C. J., and LUSK and BELT, JJ., concur.