CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, a pension trust, and Marion M. Winstead, Ray Cash, Robert J. Baker, Howard McDougall, Arthur H. Bunte, Jr., R. Jerry Cook, R.V. Pulliam, Sr. and Harold D. Leu, the present trustees, Plaintiffs,

v.

MARQUETTE BANK, MINNEAPOLIS, N.A., T.O.X. Holdings, Inc., a Delaware corporation, Hood Rentals, Inc., a Texas corporation, Texas–Oklahoma Expressways, Inc., a Texas corporation and Advance United Enterprises, Inc., a Minnesota corporation, Defendants.

Civ. No. 4–91–335.

United States District Court, D. Minnesota, Fourth Division.

Nov. 12, 1993.

business.

---

**2.** Plaintiffs claim that food stamps account for approximately $10,000, or 22%, of their monthly

Ernest Ira Reveal, Thomas Bigham Hatch, Lateesa Thamani Agunbiade, Robins Kaplan Miller & Ciresi, Minneapolis, MN, James D. O'Connell, Neal S. Deodhar, Central States SE & SW Areas Pension Fund, Law Dept., Rosemont, IL, for plaintiffs.

Daryle Lee Uphoff, Michael Douglas Olafson, Lindquist & Vennum, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on the motion of defendant Marquette Bank, Minneapolis, N.A. ("Marquette Bank") for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated below, the court grants summary judgment in favor of Marquette Bank.

## BACKGROUND

Central States, Southeast and Southwest Areas Pension Fund ("Central States") is a multi-employer pension plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3). Pursuant to collective bargaining agreements, defendants Texas–Oklahoma Expressways, Inc. ("Texas–Oklahoma") and Advance United Enterprises, Inc. ("A.U. Enterprises") were required to make contributions to Central States. Defendant T.O.X. Holdings, Inc. ("TOX") was at times relevant to this action the parent company of Texas–Oklahoma and

Hood Rentals, Inc. ("Hood").[1] A.U. Enterprises is a wholly owned subsidiary of Advance United Expressways ("A.U. Expressways").

In 1985, A.U. Enterprises acquired TOX and its subsidiaries. At the time, TOX owed $2.8 million to InterFirst Bank which had to be satisfied for the acquisition to occur. A.U. Expressways obtained a $2.8 million loan from Marquette Bank. The money was transferred to the subsidiary, A.U. Enterprises. A.U. Expressways loaned the money to Texas–Oklahoma, which gave A.U. Expressways a note secured by all its assets. The note was also guaranteed by TOX and Hood and the guarantees were supported by a pledge of the assets of TOX and Hood. Texas–Oklahoma transferred the money to TOX which retired its debt with InterFirst Bank. A.U. Expressways then pledged the note and the guarantees to Marquette Bank as security for the $2.8 million loan.

A.U. Expressways filed a Chapter 11 bankruptcy petition in 1987 and shut down all operations. As a result, A.U. Enterprises ceased making contributions to Central States triggering withdrawal liability under ERISA. The assets of Texas–Oklahoma and Hood were liquidated and $2.2 million of the proceeds was used to repay the loan from Marquette Bank. Because of the withdrawal liability, Central States became an unsecured creditor of the bankruptcy proceedings. Central States filed a claim in the proceedings and $3.8 million was allowed as a general unsecured claim and another $3.8 million was allowed but subordinated to the class of general unsecured creditors. The proceeds of the bankruptcy were not sufficient to satisfy the claims of Central States.

Central States filed suit against Texas–Oklahoma, A.U. Enterprises, Hood Rentals, Inc. ("Hood") and T.O.X. Holdings ("TOX")[2] based on the withdrawal of Texas–Oklahoma and A.U. Enterprises from the pension plan. The pension defendants failed to answer the complaint and default judgment was entered in favor of plaintiffs in March of 1992. In the same complaint, Central States asserted claims against Marquette Bank under the Minnesota Uniform Fraudulent Transfer Act ("UFTA"), Minn.Stat. § 513.41 *et seq.*, and the Minnesota Uniform Fraudulent Conveyance Act ("UFCA").[3] Marquette Bank moved for summary judgment contending that the state law fraudulent conveyance claims asserted against it are preempted by ERISA as amended by the Multiemployer Pension Plan Amendments Act of 1980, Pub.L. No. 96–364, 94 Stat. 1208 (1980) ("MPPAA").

Whether ERISA preempts Minnesota's fraudulent conveyance law is a question of first impression.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which requires the trial court to direct a verdict if there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2511.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in her favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be devel-

1. TOX owned 51 percent of the stock of Texas–Oklahoma and Hood owned the other 49 percent.

2. These defendants are collectively referred to as the "pension defendants."

3. The UFCA was repealed and the UFTA became effective on August 1, 1987. *See* 1987 Laws of Minn., ch. 19.

oped later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, a verdict should not be directed. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

## 1. Withdrawal Liability under ERISA

ERISA as originally enacted did not adequately insulate plans from the adverse effects caused by the withdrawal of one employer from a multiemployer plan. *Seaway Port Authority v. Duluth–Superior ILA Marine Ass'n Restated Pension Plan,* 920 F.2d 503, 505 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991) (citation omitted). ERISA was amended in 1980 to establish withdrawal liability for employers that cease participation in a multiemployer pension plan and provide means for computing that liability. 29 U.S.C. §§ 1381–1415; *Seaway,* 920 F.2d at 505–06 (1990). ERISA seeks to discourage voluntary employer withdrawals by imposing withdrawal liability in an amount equal to the employer's proportionate share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381 & 1391.

At the time that an employer withdraws from a plan, the plan is required to determine the amount of the employer's liability and notify the employer of the amount and demand payment. 29 U.S.C. § 1382. ERISA provides for informal review of the withdrawal liability amount within 90 days of notice. 29 U.S.C. § 1399(b)(2). If the informal review is unsuccessful, ERISA provides that the dispute between the employer and the plan shall be submitted to arbitration. 29 U.S.C. § 1401(a)(1). Upon completion of the arbitration proceedings, either party may bring an action in federal district court to enforce, vacate or modify the arbitrator's award. 29 U.S.C. § 1401(b)(2).

## 2. ERISA Preemption

■ The preemption clause of ERISA is drafted in broad terms. ERISA preempts all state law claims that "relate to" an employee benefit plan. 29 U.S.C. § 1144(a). ERISA preemption is not limited to laws which relate to specific provisions of ERISA. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). Rather, a state law may "relate to" an employee benefit plan, and be preempted, "even though the state law was not designed to affect benefit plans and its effect on such plans is only incidental." *Kuhl v. Lincoln Natl. Health Plan, Inc.,* 999 F.2d 298, 302 (8th Cir.1993) (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)). Whether ERISA preempts a state law is a question of legislative intent. The Supreme Court has made clear that Congress intended ERISA's preemption clause to be construed broadly. *Ingersoll–Rand,* 498 U.S. at 138, 111 S.Ct. at 482.

■ Central States is a creditor of the pension defendants as a result of their withdrawal liability. Central States claims that Marquette Bank is liable to Central State as a creditor of the pension defendants under state fraudulent conveyance law. The action by Central States against Marquette Bank is brought as an alternative to collect the withdrawal liability of the pension defendants, an obligation which is established and enforced under ERISA. Thus, at their core, the claims against Marquette Bank arise under ERISA and seek to satisfy liability imposed by ERISA.

■ The court is convinced, however, that the enforcement scheme ERISA provides for withdrawal liability is an exclusive remedy. The "deliberate care" with which the enforcement scheme was drafted and the "balancing of policies embodied in its choice of remedies" indicates strongly that the enforcement remedies were intended to be exclusive. *See Pilot Life,* 481 U.S. at 54, 107 S.Ct. at 1556. *Accord Carpenters & Joiners Welfare Fund v. Gittleman Corp.,* 857 F.2d 476, 479 (8th Cir.1988) (holding ERISA's enforcement provision for unpaid employer contributions is

plan's exclusive remedy). The court concludes that ERISA's remedies for collecting withdrawal liability were meant to "supplant any remedy that otherwise would be available" to the plan. *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 21, 101 S.Ct. 2615, 2627, 69 L.Ed.2d 435 (1981). Thus, claims relating to withdrawal liability are limited to the specific remedies ERISA provides and cannot be satisfied by invoking state law remedies not provided by ERISA.

Central States contends that the basis for its claim against the pension defendants is irrelevant to the fraudulent conveyance claim against Marquette Bank. The two claims simply cannot be regarded as separate. *See Deford v. Soo Line R. Co.,* 867 F.2d 1080, 1086–87 (8th Cir.) (rejecting similar argument designed to avoid preemption under the Railway Labor Act), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989). The existence and extent of Central States' creditor rights can only be determined by referring to ERISA's withdrawal liability provisions. State law does not determine when an employer is liable for withdrawing from a multiemployer plan.

■ The nature of the state fraudulent conveyance law supports the conclusion that the claims against Marquette Bank are "related to" ERISA. "The Minnesota Uniform Fraudulent Transfer Act is not substantive in nature, but instead merely confers an alternative remedy for protecting preexisting creditor rights." *Deford,* 867 F.2d at 1087. The rights a creditor seeks to enforce must exist under independent law. *Id.* "The purpose of the statute is to grant creditors additional enforcement possibilities when a debtor transfers [its] assets to a third party." *Id.* In this case, the creditor rights asserted by Central States are based upon ERISA and the fraudulent conveyance law only affords an additional method for enforcing the provisions of ERISA.

## CONCLUSION

The court concludes that the state law fraudulent conveyance claims asserted by Central States against Marquette Bank are preempted by ERISA. Accordingly, **IT IS HEREBY ORDERED** that defendant Marquette Bank's motion for summary judgment is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**