**OREGON LABORERS–EMPLOYERS HEALTH & WELFARE TRUST FUND, Oregon Laborers–Employers Pension Trust Fund, and Oregon Laborers–Employers Defined Contribution Pension Plan, Plaintiffs,**

v.

**ALL STATE INDUSTRIAL AND MARINE CLEANING, INC., and Action Cleaning, Inc., California corporations, Defendants.**

Civ. No. 94–183–BE.

United States District Court,
D. Oregon.

May 4, 1994.

Charles D. Colett, Galton, Scott & Colett, Portland, OR, for plaintiffs.

Randolph B. Harris, Littler, Mendelson, Fastiff & Tichy, Portland, OR, for defendants.

## OPINION

FRYE, District Judge:

The matters before the court are the motions to dismiss of defendants, All State Industrial and Marine Cleaning, Inc. (# 16) and Action Cleaning, Inc. (# 19), for failure to state a claim under the Federal Rules of Civil Procedure 12(b)(6).

## BACKGROUND

Plaintiffs are the Oregon Laborers–Employers Health and Welfare Trust Fund, the Oregon Laborers–Employers Pension Trust Fund, and the Oregon Laborers–Employers Defined Contribution Pension Plan (hereinafter, the Trusts). The Trusts administer contributions made by employers for the medical care, pension, training, vacation and other benefits of employees required under the terms of the applicable collective bargaining agreements.

In 1992, the Trusts filed an action against defendant All State Industrial and Marine Cleaning, Inc., a California corporation (hereinafter, All State). Judgment was thereafter entered in favor of the Trusts for more than $160,000.00. Subsequently, the Trusts filed this second action against All State and Action Cleaning, Inc., another California corporation. Since the pending motions to dismiss include the issue of res judicata, it is necessary for the court to describe the allegations in the first action, as well as in this action.

The first action filed by the Trusts was filed under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132 and 1145, and the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a). The Trusts alleged that All State was a party to a collective bargaining agreement which obligated All State to make contributions to the Trust, and that All State failed to make the required contributions. In count one of the first action, the Trusts alleged specific contributions, liquidated damages, audit fees, and other monies which

the Trusts contended were owed by All State under the collective bargaining agreement. In count two of the first action, the Trusts sought an accounting of all of the contributions due from All State for the period from June 5, 1990, to 1992, and a judgment in the amount of contributions found to be owing. During the course of the first action, the Trusts secured the requested accounting, obtained an order of default against All State, and submitted evidence which supported their entitlement to a judgment of over $160,-000.00.

In this action, the Trusts name as defendants both All State and another California corporation, Action Cleaning, Inc. (Action Cleaning). The first count in this action is based on ERISA, 29 U.S.C. § 1132, and the LMRA, 29 U.S.C. § 185(a). The Trusts allege that Action Cleaning is the alter ego or successor or same employer as All State, and as such is liable for the contributions which All State was required to make under the collective bargaining agreement. In support of this claim, the Trusts allege that All State and Action Cleaning share the same corporate offices in the State of California, use the same employees, perform the same type of work, and interchange vehicles, real property, and assets. The Trusts seek payment from All State of the judgment due in the first action.

In the second count, the Trusts allege a cause of action for fraudulent transfer and conveyance under O.R.S. 95.230(1)(a). After incorporating most of the allegations found in the first count, the Trusts allege that All State was the owner of real property located in Portland, Oregon; that from the month of February, 1992 through the month of August, 1992, the Trusts were making demand upon All State for payment of sums due and for an audit of records; that on September 17, 1992, the Trusts sent a demand letter to All State, giving All State a deadline of September 26, 1992; that on September 22, 1992, a deed quitclaiming the interest of All State in the real property to Action Cleaning was recorded in Multnomah County, Oregon; that the deed was dated December 31, 1991; that the first action was filed in this court on October 14, 1992; and that All State transferred the real property to Action Cleaning with the intent to hinder, delay or defraud the Trusts.

The Trusts argue that the intent of All State to hinder, delay or defraud the Trusts is shown by the fact that the transfer was to "an insider;" that All State retained control of the property after the transfer; that the transfer was made after All State was threatened with suit; that the consideration for the transfer was inadequate; that there was a failure to record the instrument of transfer within a reasonable time after its execution; that the transfer was of substantially all of the assets of All State; and that All State became insolvent at or shortly after the time of the transfer.

In the third and fourth counts, the Trusts allege alternate grounds for a finding of fraudulent transfer, based on the same facts. In the third count, the Trusts allege that All State made the transfer without receiving a reasonably equivalent value in exchange, and that All State believed or should have believed that it would then incur debts beyond its ability to pay. In the fourth count, the Trusts allege that All State made the transfer without receiving a reasonably equivalent value in exchange, and that All State was insolvent at the time of the transfer or became insolvent as a result of the transfer.

With respect to the third and fourth counts, the Trusts seek a decree voiding the transfers of the real property, an injunction against further disposition of the properties, and an order levying execution on the properties.

In the fifth count, the Trusts seek injunctive relief, alleging that Action Cleaning has placed the real property for sale to third parties, and that the defendants have transferred vehicles and equipment among their members in violation of a court order granted in the first action. The Trusts seek an injunction preventing the defendants from transferring the real property or any trucks, equipment or personal property.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) will only be granted if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gibson v. United States,* 781 F.2d 1334, 1337 (9th Cir.1986), *cert. denied,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. *Cassettari v. Nevada County, Cal.,* 824 F.2d 735, 737 (9th Cir.1987).

## ANALYSIS

### 1. *Res Judicata*

■ All State contends that the doctrine of res judicata precludes the Trusts from prevailing on their claims for fraudulent conveyance. The Oregon Supreme Court explained the doctrine of res judicata, or claim preclusion, in *Rennie v. Freeway Transport,* 294 Or. 319, 323, 656 P.2d 919 (1982):

[A] plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on res judicata grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based upon the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

The courts apply this doctrine to give finality to the conclusion of a dispute and to prevent parties from splitting a dispute into separate controversies. *Drews v. EBI Cos.,* 310 Or. 134, 795 P.2d 531 (1990).

The Trusts have prosecuted one action against All State to a binding final judgment. The Trusts argue, however, that their claims against All State in this second action are not based upon the same factual transaction; that the claims in this action are not for a double recovery; and that the claims for fraudulent transfer in this action could not have been brought in the first action.

All State contends that the Trusts could have brought the claims for fraudulent conveyance in the first action. Although in both of their complaints the Trusts have alleged

that All State failed to make the required benefit contributions, this allegation was the sole basis for relief in the first action. The complaint in the first action contained no allegations regarding Action Cleaning, the relationship between the two companies, or the transfer of real property between the two companies, which is the basis for the claim of the Trusts for fraudulent conveyance in this second action.

■ In order to prevail on the defense of claim preclusion, the defendants do not have to plead or prove that an issue was actually litigated in the first action, but merely that the parties had "an opportunity to litigate" the issue in the first action. *Drews,* 310 Or. at 143. Under the modern view, the definition of a "factual transaction" has been broadened to permit easier joinder of related claims. *Troutman v. Erlandson,* 287 Or. 187, 598 P.2d 1211 (1979). In *Troutman,* the Oregon Supreme Court held that the plaintiff could not bring a second action alleging misrepresentation by his former partner when he could have alleged the misrepresentation by his former partner in an earlier action concerning the distribution of partnership assets.

If a plaintiff does not discover the facts concerning the second claim during the pendency of the first action, however, the plaintiff could not have joined that claim in the first action. *Troutman, supra.* The Trusts do not allege when they discovered the facts which form the basis for the fraudulent conveyance claim. The court considers this to be a factual matter and not appropriate as a basis for a motion to dismiss.

### 2. *Action Cleaning's Liability Under ERISA*

■ Action Cleaning contends that it cannot be held liable under the ERISA claim in this second action because it is not a signatory to the collective bargaining agreement. Action Cleaning concedes that non-signatories may be liable under certain circumstances, such as when the non-signatory party is a "successor" to a signatory. However, Action Cleaning contends that the Trusts have not adequately alleged facts showing

that Action Cleaning is a successor to a signatory or the alter ego of that signatory. The Trusts counter by arguing that they have adequately alleged a basis for liability against Action Cleaning under ERISA.

■■ Generally, an employer is not obligated to contribute to a multi-employer benefit plan unless the employer is a signatory to the plan. 29 U.S.C. § 1145; *Carpenters S. Cal. Admin. Corp. v. Majestic Housing,* 743 F.2d 1341, 1346 (9th Cir.1984). However, a non-signatory may be subject to liability under certain limited circumstances, such as where the non-signatory is the alter ego or successor to a signatory. *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.,* 823 F.2d 289 (9th Cir.1987).

■ In a case where the non-signatory is the successor to a signatory, the courts consider a number of factors to determine whether there is "substantial continuity" between the enterprises. *Id.* at 293. These factors include whether there has been a substantial continuity of the same business operation; whether the new employer uses the same plant; whether the same or substantially the same work force is employed; whether the same jobs exist under the same working conditions; whether the same supervisors are employed; whether the same machinery, equipment, and methods of production are used; and whether the same product or service is offered. *Id.* at 294. It is not necessary for all of these factors to be present if, under the totality of the circumstances, there is substantial continuity between the old and new enterprise. *Id.*

Other courts use a similar analysis, but speak in terms of the second employer being the "alter ego" of the signatory. *New England Mechanical, Inc. v. Laborers Local Union 294,* 909 F.2d 1339, 1343 (9th Cir.1990). Whatever the standard, the factual question is whether the difference between the two entities is based on technical structure rather than an actual, substantive change in ownership or management. *Id.*

In their claim for successor liability, the Trusts allege that All State and Action Cleaning are two California corporations which share the same corporate offices in the State of California, use the same employees, perform the same type of work, and interchange vehicles, real property and assets. The Trusts allege that based on these factors, Action Cleaning is the alter ego .or successor in liability of All State, and that Action Cleaning and All State should be treated as a single employer.

Action Cleaning argues that these allegations are too vague and broad to state a claim against it for successor or alter ego liability. Under the liberal federal pleading standards, the court cannot conclude that the Trusts could prove no set of facts which would entitle them to relief.

3. *Preemption of Oregon State Claims*

■ Action Cleaning contends that the claims of the Trusts for fraudulent conveyance under the laws of the State of Oregon are preempted by ERISA. Action Cleaning relies on a case from the District of Minnesota, where the court held that a claim of a pension fund for fraudulent conveyance under the laws of the State of Minnesota was preempted by ERISA. *Central States Pension Fund v. Marquette Bank,* 836 F.Supp. 673 (D.Minn.1993).

The Trusts contend that the holding in *Central States Pension Fund* is not applicable to this case because it is limited to the issue of withdrawal liability. The Trusts point to *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), where the United States Supreme Court allowed the use of state law remedies such as garnishment in the enforcement of ERISA.

Any and all state laws, insofar as they may now or hereafter relate to any employee benefit plan, are preempted by ERISA. *See* 29 U.S.C. § 1144(a). However, Congress did not intend to forbid the use of general state laws for executing judgments against ERISA welfare benefit plans. *Mackey,* 486 U.S. at 831, 108 S.Ct. at 2186. The *Mackey* court also stated that other state law procedures could be used against ERISA plans, citing Fed.R.Civ.P. 69(a), which defers to state law to provide procedures for collecting judgments. *Id.* at 833–34, 108 S.Ct. at 2187–88.

The fraudulent conveyance statutes in the State of Oregon are state laws of general applicability and do not relate to any employee benefit plan. The claims of the Trusts for fraudulent conveyance are not preempted by ERISA.

## CONCLUSION

The motions to dismiss of All State (# 16) and Action Cleaning (# 19) for failure to state a claim under the Federal Rules of Civil Procedure 12(b)(6) are denied.